# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DAVID FORTHUBER,**

    **Plaintiff,**

v.        Case No: 6:18-cv-00880-GAP-GJK

**THE FIRST LIBERTY INSURANCE CORPORATION,**

    **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss Count I with Prejudice, or, Alternatively, to Strike Claims for Damages (Doc. 9) filed by the Defendant, The First Liberty Insurance Corporation ("First Liberty"), the Response in Opposition (Doc. 13) filed by the Plaintiff, David Forthuber ("Forthuber"), and the Reply to Plaintiff's Response (Doc. 16.) filed by First Liberty.

### PROCEDURAL BACKGROUND

Forthuber brought the instant suit in the Eighteenth Judicial Circuit on April 4, 2018 ("Forthuber II"). (Doc. 2, p. 1.) Count I of Forthuber's complaint asserted bad faith pursuant to Fla. Stat. §624.155 and sought damages including punitive damages. Count II of the complaint alleged breach of contract for First Liberty's failure to pay a separate claim, unrelated to Count I. (Doc. 1, p. 8.) Forthuber II was removed to Federal Court on June 6, 2018. (*Id.*) By its motion, First Liberty seeks dismissal of Count I or, in the alternative, to strike Forthuber's claim for punitive damages. (Doc. 9, p. 1.)

## BACKGROUND

After Forthuber's residence was damaged in May 2009, Forthuber filed a claim with his home insurer, First Liberty ("2009 Claim.") (Doc. 2, p. 1.) First Liberty disputed the amount claimed and Forthuber brought suit for breach of contract in the Eighteenth Judicial Circuit for Seminole County in *Forthuber v. First Liberty Ins. Corp.* 2011-CA-001210 ("Forthuber I"). The parties signed a settlement agreement on July 15, 2015 ("Settlement Agreement"). (Doc. 9-1.) Pursuant to the Settlement Agreement First Liberty paid $30,000 to Forthuber ("2015 Payment"), and Forthuber released First Liberty from all claims arising from the 2009 Claim, except Forthuber's claim for attorneys' fees. (*Id.*)

### I. Attorneys' Fees: Appeal to the Fifth District Court of Appeal

First Liberty paid the 2015 Payment on August 10, 2015. (Doc. 2, p. 2.) In Forthuber I, a fee hearing was held on April 27, 2016. (*Id.* at 3.) Forthuber claimed attorneys' fees pursuant to Fla. Stat. § 627.428 for the hours his attorney worked on Forthuber I, including an amount that Forthuber's attorney accrued at a prior law firm ("Prior Firm Fees"), which was disputed by First Liberty. *Id.* On June 14, 2016, the Court issued a Final Judgment Awarding Fees to Forthuber which excluded the Prior Firm Fees. (*Id.*) The amount stipulated in the Final Judgment Awarding Fees was timely paid to Forthuber by First Liberty ("2016 Fee Payment"). (Doc. 2-1, p. 18.) Forthuber appealed, and on November 17, 2017 the Fifth DCA reversed and remanded the case back to the trial court to consider the Prior Firm Fees. *Forthuber v. First Liberty Ins. Corp.*, 229 So. 3d 896 (Fla. 5th DCA 2017).[1]

---

[1] This matter is still pending in the Circuit Court.

## II. Civil Remedy Notice

On January 19, 2018, Forthuber filed and served on First Liberty a Civil Remedy Notice of Insurer Violations ("2018 CRN") which included claims that First Liberty breached the Settlement Agreement, misrepresented its obligations to Forthuber, and acted unreasonably in contesting and failing to pay the entire amount of attorneys' fees claimed by Forthuber. (Doc. 2-1, pp. 12-13.) The 2018 CRN claimed damages totaling $318,000, the exact composition of which was not specified. (Doc. 2-1 p. 17.) However, it is clear that the lion's share of the fees Forthuber claims include those expended by Forthuber's attorney at his prior firm and those expended pursuing the appeal in the Fifth DCA. (Doc. 2-1 pp. 16-17.)

## LEGAL STANDARD

Dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6) will be granted where the allegations in a complaint, however true, do not raise a claim of entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The court must limit its consideration to the pleadings and any attached exhibits. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

## ANALYSIS

### I. Fla. Stat. § 624.155(3)(d)

Florida Statutes § 624.155 provides a cause of action which an insured may bring against their insurer when the insurer has not attempted "in good faith to settle when, under all the circumstances, it could and should have done so." Fla. Stat. § 624.155(1)(b)(1). As a prerequisite to a claim under Fla. Stat. § 624.155, the insured must first file and serve a CRN detailing the insured's

claim and damages, which starts a 60-day cure period. Fla. Stat. § 624.155(3). After expiration of the cure period, a bad faith action may be brought, however "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." Fla. Stat. § 624.155(3)(d).

In *Talat Enters. v. Aetna Cas. & Sur. Co.*, the Florida Supreme Court held that a CRN is cured under Fla. Stat. § 624.155(3)(d) when an insurer pays "the contractual amount due the insured," which is "the amount owed pursuant to the express terms and conditions of the policy." 753 So. 2d 1278, 1283 (Fla. 2000). This contractual amount due does not include extra contractual damages such as punitive damages and attorneys' fees. *Id.* at 1282.

## II. The Amounts Claimed in the 2018 CRN are Extra Contractual Damages

First Liberty argues that Count I should be dismissed because the damages arising from the 2009 Claim have been paid, meeting the requirements of Fla. Stat. § 624.155(3)(d). [2] (Doc. 9, p. 4- 9.) Forthuber does not contest that the 2015 Payment satisfied a contractual amount owing under the policy. Rather he argues that the costs and fees sought by the 2018 CRN are also contractual damage under the insurance policy. (Doc. 13, p. 5.) First Liberty, however, contends that the costs, fees, and interest claimed in the 2018 CRN are extra contractual damages and, under *Talat*, cannot be used as the foundation for a bad faith claim. (Doc. 9, pp. 4, 8.)

In support of his claim, Forthuber relies on *Pepper's Steel & Alloys, Inc. v. United States*, 850 So. 2d 462 (Fla. 2003) which held that under Fla. Stat. § 627.428 an insured may recover attorneys' fees incurred in reaching a settlement or contesting whether a settlement had in fact been

---

[2] The 2015 Payment was made before the 2018 CRN was filed, and therefore occurred prior to the 60-day cure period beginning. In *Talat* the insured filed a CRN after the insurer had paid the contractual damages and the court found that payment before the filing of a CRN meets the requirements of Fla. Stat. § 624.155(3)(d). *See Talat* 753 So. 2d at 1283.

reached, and *Bankers Sec. Ins. Co. v. Brady*, 765 So. 2d 870 (Fla. 5th DCA 2000) which held that an insured may recover attorneys' fees incurred when bringing suit to enforce a settlement agreement. (Doc. 13, p. 5.). The cases cited by Forthuber only address when an entitlement to fees may arise under Fla. Stat. § 627.428, they do not support Forthuber's argument that attorneys' fees and costs are contractual damages supporting a bad faith claim under Fla. Stat. § 624.155.

Forthuber contends that a bad faith action can arise from a failure to pay an agreed upon settlement, citing *Higgs v. Indus. Fire & Cas. Ins. Co.*, 501 So. 2d 644 (Fla. 3d DCA 1986). (Doc. 13, p. 5.) However, there was no agreement in this case as to the amount of fees to be paid. Rather, the Settlement Agreement provides that the 2015 Payment is "exclusive of a settlement of Forthuber's attorneys' fees and costs," and that Forthuber's release of claims "does not, however, resolve Forthuber's claim for attorneys' fees and costs, the amount of which remains to be determined by the Court." (Doc. 9-1.)

### III. First Liberty Has Already Paid the Required Contractual Damages

Even if the amounts claimed in the 2018 CRN are contractual, Forthuber's claim fails. Forthuber contends that Fla. Stat. § 624.155(3)(d) requires payment of all contractual amounts owing before a bad faith action can be avoided. (Doc. 13, p. 5.) However, Forthuber's position has been foreclosed by *Talat*. In *Talat* the court endorsed the finding of Magistrate Judge Glazebrook that "an insurer need not immediately pay 100% of the damages claimed to flow from bad faith conduct" to avoid a bad faith cause of action. *Talat* 753 So. 2d at 1282 (*citing Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 952 F. Supp. 773, 777-78 (M.D. Fla. 1996)). First Liberty's 2015 Payment satisfied the underlying contractual obligation and in 2016 First Liberty also paid the fees initially awarded by the Circuit Court in Forthuber I.

(Doc. 2-1, p. 18.)[3] Allowing an insured to file a CRN after an insurer has made significant payments of contractual and extra contractual costs, and then claim that nothing has been paid such that a bad faith action arises under § 624.155(3)(d), would ignore the central holding in *Talat*: That Fla. Stat. § 624.155(3)(d) cannot be used to force an insurer to pay all contractual and extra contractual damages in dispute. *Talat* 753 So. 2d at 1282.

Accordingly, it is **ORDERED** AND **ADJUDGED** that Defendant's Motion to Dismiss (Doc. 9) is GRANTED. COUNT I of the complaint is dismissed with prejudice.

**DONE** AND **ORDERED** in Chambers in Orlando, Florida, on September 27, 2018.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[3] A provision of the Settlement Agreement required Forthuber to release all claims relating to two CRN's filed prior to the 2015 Payment: one filed on September 20, 2010 and one filed on July 18, 2014. (Doc. 9-1.)